## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

ANDREA SUE DAVIS,      )
     )
     Plaintiff,      )
     )
v.      )
     )    Case No.:  4:17-cv-01468-SGC
SOCIAL SECURITY      )
ADMINISTRATION, Commissioner,      )
     )
     Defendant.      )

## MEMORANDUM OPINION[1]

The plaintiff, Andrea Sue Davis, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Davis timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3).  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Davis completed the twelfth grade but did not obtain her diploma or GED. (Tr. at 42).  She has previously worked as a server in a restaurant and as a cashier

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 14).

and sales associate in retail establishments.  (*Id.* at 260, 281, 314).  In her applications for DIB and SSI filed on February 18, 2016, Davis alleged she became disabled on January 1, 2013, as a result of hypothyroidism, irritable bowel syndrome ("IBS"), endometriosis, human papillomavirus ("HPV"), nerve and muscle pain, dysrhythmia, attention deficit/hyperactivity disorder ("ADHD"), anxiety, depression, anger, and chronic fatigue.  (*Id.* at 97-98, 116-17).[2]  After her February 18, 2016 applications were denied, Davis requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 114-15, 133-34, 142-48, 151).  Following a hearing, the ALJ determined Davis was not disabled.  (*Id.* at 16-26).  Davis was 29 years old when the ALJ issued his decision.  (*Id.* at 26, 67).  After the Appeals Council denied review of the ALJ's decision (*id.* at 1), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Davis commenced this action.  (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[2] Davis previously filed applications for DIB and SSI on July 20, 2014, alleging she became disabled on January 1, 2013, as a result of hypothyroidism, IBS, HPV, kidney problems, the presence of blood in her urine, and anxiety.  (Tr. at 67, 82).  Those applications were denied on October 31, 2014.  (*Id.* at 80-81, 95-96, 135-41).

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also id.* at § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Furthermore, a DIB claimant must show she was disabled between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Davis met the Social Security Administration's insured status requirements through September 30, 2017, and has not engaged in substantial gainful activity since her alleged onset date of January 1, 2013. (Tr. at 18).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at §§ 404.1521, 416.921; *see also* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c).[3] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a). A claimant may be found disabled based on

---

[3] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

a combination of impairments, even though none of the individual impairments alone is disabling. 20 C.F.R. §§ 404.1523, 416.923. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at §§ 404.1512(a) and (c), 416.912(a) and (c). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Davis has the following severe impairments: ADHD, anxiety disorder, severe major depressive disorder with psychotic features, panic disorder, obsessive-compulsive disorder, a specific learning disorder with an impairment in reading comprehension, and restless leg syndrome. (Tr. at 18).[4]

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id.* at §§ 404.1525-26, 416.925-26. The claimant bears the burden of proving her impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled. 20 C.F.R §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). At

---

[4] The ALJ determined Davis' diagnoses of hypothyroidism, IBS, and gastroesophageal reflux disease ("GERD") constituted non-severe impairments. (Tr. at 19).

the third step, the ALJ determined Davis does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 19).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R §§ 404.1520(e), 416.920(e); *see also id.* at §§ 404.1545, 416.945. A claimant's RFC is the most she can do despite her impairments. *See id.* at §§ 404.1545(a)(1), 416.945(a)(1). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b), 416.920(a)(4)(iv) and (e), 416.960(b). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* at §§ 404.1560(b)(1), 416.960(b)(1). The claimant bears the burden of proving her impairment prevents her from performing her past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3), 416.920(a)(4)(iv), 416.960(b)(3).

Before proceeding to the fourth step, the ALJ determined Davis has the RFC

to perform a full range of work at all exertional levels with the following limitations: she should never climb ladders or scaffolds; she should never be exposed to unprotected heights, dangerous tools or machinery, or hazardous processes; she should never operate commercial vehicles; she is limited to routine and repetitive tasks and making simple work-related decisions; she is not able to perform at a production-rate pace but can perform other goal-oriented work; she can have frequent interaction with supervisors but only occasional interaction with coworkers and the general public; and in addition to normal workday breaks, she would be off-task five percent of an eight-hour workday. (Tr. at 21). At the fourth step, the ALJ determined Davis is unable to perform her past relevant work. (*Id.* at 24).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1), 416.920(a)(4)(v) and (g)(1), 416.960(c)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at

§§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Davis' age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Davis can perform, such as those of laundry laborer, cleaner, and packager. (Tr. at 25). Therefore, the ALJ concluded Davis is not disabled. (*Id.* at 26).

## III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a

preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Davis argues (1) the ALJ erred in assigning only partial weight to the opinion of Dr. June Nichols, (2) she has an impairment or combination of impairments that meets Listing 12.06, (3) the ALJ's decision is not supported by substantial evidence, and (4) the ALJ failed to adequately consider her testimony regarding the side effects of her medication. (Doc. 10).

### A. Dr. Nichols' Opinion

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms,

diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

"The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "The ALJ may consider many factors when weighing medical evidence, including the claimant's relationship with the examining or treating physician, whether a medical opinion is well-supported, whether a medical opinion is consistent with the claimant's records, and a doctor's specialization." *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 439 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)).

An ALJ's failure to clearly articulate the weight assigned to a medical opinion is an error that requires reversal and remand. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) ("In the absence of [a clear articulation of the weight given different medical opinions], it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence[,]" and " 'we will decline to affirm simply because some rationale might have supported the ALJ's

conclusion.'" (quoting *Winschel*, 631 F.3d at 1179)).

Dr. Nichols is a psychologist. (Tr. at 555). She performed a consultative psychological examination of Davis on May 3, 2016, in connection with Davis' applications for disability benefits. (*Id.*). Based on her examination, she diagnosed Davis with ADHD, panic disorder, sever major depressive disorder with psychotic features, obsessive compulsive disorder, and a specific learning disorder with impairment in reading comprehension. (*Id.* at 557). Dr. Nichols offered the opinions Davis' "ability to respond appropriately to supervision, coworkers and work pressures in a work setting is impaired" and her "anxiety and panic attacks would markedly interfere with concentration, persistence and pace." (*Id.* at 558). Dr. Nichols further opined Davis' prognosis for significant improvement is poor because her symptoms have been present since adolescence, even with medication. (*Id.* at 557).

The ALJ explicitly stated he assigned Dr. Nichols' opinions partial weight. (*Id.* at 24). As a grounds for this assignment, he noted that while Dr. Nichols' specialty is psychology and her opinions are generally consistent with the medical evidence, Davis' treatment records show her anxiety is controlled on medication. (*Id.*).[5] These were appropriate grounds on which to partially discredit Dr. Nichols'

---

[5] As additional grounds, he noted the record of Dr. Nichols' examination contains several diagnoses not shared by Davis' treating physicians (e.g., obsessive-compulsive disorder and a specific learning disorder with impairment in reading comprehension). (Tr. at 24). Although

opinions. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (identifying consistency with the record as a factor relevant to weighing medical opinion).

Moreover, the stated grounds are supported by substantial evidence. Davis saw Tami Sparks, a certified registered nurse practitioner employed in a psychiatrist's office, between July 2012 and September 2013. (Tr. at 368-84). In July 2012, Davis reported she felt happy but had trouble concentrating. (*Id.* at 383). Sparks prescribed Vyvanse for Davis' symptoms of attention deficit disorder. (*Id.*). She continued Davis on Zoloft, noting that while Davis had symptoms of post-traumatic stress disorder, they seemed to be controlled at the time. (*Id.*).[6]

On August 2, 2012, Davis reported the medications had been very effective and she had not experienced side effects. (*Id.* at 382). Sparks noted Davis had made a great deal of improvement and would start tapering off Zoloft. (*Id.*). On August 30, 2012, Davis reported Vyvanse had "changed her life," noting her GED

_____

Davis' treatment records do not reveal a diagnosis of obsessive-compulsive disorder or a learning disorder, the undersigned doubts the adequacy of this ground for partially discrediting Dr. Nichols' opinions because the ALJ himself determined Davis' severe impairments include obsessive-compulsive disorder and a specific learning disorder with impairment in reading comprehension. (*Id.* at 18). Nonetheless, as discussed below, substantial evidence otherwise supports the weight the ALJ assigned to Dr. Nichols' opinions. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("When the [ALJ's] articulated reasons for assigning limited weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error," and "[t]o the extent an [ALJ] commits an error, the error is harmless if it did not affect the judge's ultimate determination." (citing *Moore*, 405 F.3d at 1212; *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983))).

[6] Zoloft is an antidepressant. *See* https://medlineplus.gov/druginfo/meds/a697048.html, *last visited* March 25, 2019.

reading comprehension score went from below average to advanced. (*Id.* at 381).

In January 2013, Davis reported she felt more emotional and overwhelmed at times, had failed the math portion of the GED, and felt Vyvanse was not as beneficial as it had been a month ago. (*Id.* at 378). Sparks noted Davis was anxious, sad, and easily distracted. (*Id.*). Sparks increased Davis' Vyvanse and Zoloft, noting Davis' anxiety was much better controlled at a higher dose of Zoloft. (*Id.*). In March 2013, Davis reported she had stopped taking her Vyvanse and Zoloft altogether because the increased dose of Vyvanse had worsened her mood swings and she had experienced a suicidal ideation on the Zoloft and did not like the "numb" feeling it caused. (*Id.* at 376).

However, by April 2013, Davis reported doing better back on Vyvanse. (*Id.* at 374). In May 2013, she reported she was feeling much better, her symptoms were dramatically better and rarely experienced, she experienced no side effects from her medication, and she was doing well with her music career. (*Id.* at 372). In September 2013, Davis reported her symptoms were present but better than they had been in the past. (*Id.* at 368). The only side effect she reported was decreased appetite. (*Id.*). Sparks described Davis' established problems as stable. (*Id.* at 369).

Davis began seeing Dr. Richard Grant, a psychiatrist, in January 2014. (*Id.* at 396). Dr. Grant treated Davis' ADHD. (*Id.* at 538-48).

Davis began seeing Dr. Gary Allen Mellick, a neurologist, in December 2014. (*Id.* at 516). She reported she has always had anxiety, medication does not help, and the anxiety affects her daily life. (*Id.* at 518). She also reported random panic attacks accompanied by dizziness. (*Id.*). Dr. Mellick prescribed 1 mg of Ativan twice a day. (*Id.* at 516).

In April 2015, Davis reported all of her symptoms had gone away since starting Ativan and that she was having no other problems. (*Id.* at 506). Dr. Mellick noted Davis was doing well on Ativan and that the medication was helping her anxiety. (*Id.*).

Dr. Mellick increased Davis' Ativan to 1 mg three times per day in July 2015 at Davis' request. (*Id.* at 506, 512). Davis stated reason for the request was that she was going to try to lower her dose of Adderall and knew her anxiety would increase as a result. (*Id.* at 506).

In October 2015, Davis reported she was doing well and felt like her medications were well-regulated and working like they needed to be. (*Id.*) She also reported her anxiety was "so much better." (*Id.*). The treatment note states Davis was "so thankful Dr. Mellick finally got something that worked for her." (*Id.*). She asked Dr. Mellick to prescribe Adderall after noting Dr. Grant had switched her to Vyvanse, which gave her "horrible side effects." (*Id.*).

In January 2016, Davis again reported she had been doing well and her

medications were working well, although Dr. Mellick increased her Ativan to 1 mg four times per day at her request. (*Id.* at 505-06). Dr. Mellick began prescribing Adderall for Davis sometime after January 2016. (*Id.* at 506).

In April 2016, Davis reported she had been doing well. (*Id.* at 573). She also reported her Adderall and Ativan were working well together and keeping her more alert and her mood more stable. (*Id.*).

In July 2016, Davis reported she was doing well and the Celexa she had been prescribed had "made her so much better to be around." (*Id.* at 571). However, she also stated she thought she needed more Adderall because she was lying in bed all day, was not as alert or focused, and had to take a second Adderall tablet to obtain motivation. (*Id.*). Dr. Mellick increased Davis' Adderall from 15 mg once a day to 20 mg once a day. (*Id.* at 571, 574). He also told her to take less Ativan so she would be less sleepy. (*Id.* at 571).

In September 2016, Davis reported the Adderall dose was not right for her and stated she would like to try Vyvanse. (*Id.* at 568). She also reported having multiple anxiety attacks per week, one or two panic attacks per day, and highs and lows throughout the day. (*Id.* at 567-68). She linked these new issues to her Adderall. (*Id.*). Dr. Mellick prescribed Vyvanse instead. (*Id.*). He also prescribed Vistaril for Davis' anxiety and told Davis not to take anymore of her mother's Xanax. (*Id.*). During a December 2016 follow up, Davis' chief complaint was

neck pain.  (*Id.* at 563).

The records of Davis' treatment for anxiety, depression, and ADHD spanning more than four years easily permit the finding that adjustments to Davis' medication regimen effectively managed the fluctuating symptoms of those conditions and constitute substantial evidence on which to partially discredit Dr. Nichols' inconsistent opinions.

Davis quotes extensively from a Seventh Circuit case (and Alabama federal district court cases quoting the appellate court) reversing and remanding a decision denying benefits where the ALJ rejected the opinion of a psychiatrist appointed by the ALJ to evaluate the claimant's condition (Doc. 10 at 20-22 (citing *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995)).  The Seventh Circuit's conclusion was based in part on the ALJ's deficient analysis.  *See Wilder*, 64 F.3d at 337-38 ("[T]he facts on which the administrative law judge relied to contradict [the opinion] are singly and together unimpressive.").  Here, the ALJ explicitly stated the weight assigned to Dr. Nichols' opinions, the ALJ clearly articulated acceptable reasons for partially discrediting the opinions, and the ALJ's determination is supported by substantial evidence.  Therefore, *Wilder* is inapposite.

Davis also notes an ALJ cannot substitute his judgment for that of a medical professional.  (Doc. 10 at 20) (citing *Freeman v. Schweiker*, 681 F.2d 727, 731

(11th Cir. 1982)). The conclusion the the ALJ properly weighted Dr. Nichols' opinions effectively dispenses with this argument. *See also* 20 C.F.R. §§ 404.1527(d), 416.927(d) (opinions on some issues, such as a claimant's RFC and whether he is disabled, are not medical opinions, but rather opinions on issues reserved to Commissioner); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (noting "task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors").

Finally, Davis argues that if the ALJ was not satisfied with Dr. Nichols' report, he should have sought additional information. (Doc. 10 at 23-24). As the Commissioner rightly notes, it is not clear what additional information Davis believes the ALJ should have sought. Regardless, because the partial weight the ALJ assigned to Dr. Nichols' opinions is supported by substantial evidence and the ALJ's decision is otherwise supported by substantial evidence, the ALJ satisfied his obligation to fully and fairly develop the record. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (noting ALJ's duty to develop record fully and fairly); *Osborn v. Barnhart*, 194 F. App'x 654, 668 (11th Cir. 2006) (ALJ did not err by failing to re-contact medical professional for clarification of report because substantial evidence supported ALJ's determination claimant was not disabled and, thus, there was no need for additional information or clarification).

**B. Listing 12.06**

Davis argues she has an impairment or combination of impairments that meets Listing 12.06, which addresses certain mental disorders. (Doc. 10 at 24-27). She cites the report of Dr. Nichols' consultative examination as the primary support for her argument and summarily claims the records of Nurse Sparks, Dr. Grant, Dr. Mellick, and Dr. Cesar Fernandez, a gastroenterologist, support Dr. Nichols' report. (*Id.* at 25-27).

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)); *see also* 20 C.F.R. § 416.925(a)-(d). A claimant's burden of proving she has an impairment or combination of impairments that meets a Listing is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

Listing 12.06 directs a finding of disability where a claimant has an anxiety, panic, or obsessive-compulsive disorder bearing certain characteristics (the "paragraph A criteria") and additionally satisfies the requirements of paragraph B (the "paragraph B criteria") or paragraph C (the "paragraph C criteria"). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. The paragraph B criteria require a claimant to

have an extreme limitation in one, or marked limitations in two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* An extreme limitation is one that prevents a claimant from functioning in a given area independently, appropriately, effectively, and on a sustained basis. *Id.* A marked limitation is one that seriously limits a claimant's ability to function in a given area independently, appropriately, effectively, and on a sustained basis. *Id.*[7]

The paragraph C criteria require a claimant's anxiety, panic, or obsessive-compulsive disorder to be serious and persistent, meaning there is (1) medical documentation of the disorder for a period of at least two years and (2) evidence of both (a) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder" and "[m]arginal adjustment, that is, [the claimant] ha[s] minimal capacity to adopt to changes in [her] environment or to demands that are not already part of [her] daily life." *Id.*[8]

---

[7] Davis quotes an outdated version of Listing 12.06. (Doc. 10 at 24-25). The version addressed herein applies to claims pending on or after January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016).

[8] The ALJ explicitly determined Davis does not have an impairment or combination of impairments that meets Listing 12.06. (Tr. at 20). In making this determination, he found Davis has only mild limitations in the functioning areas of understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. (*Id.* at 20-21). He further found Davis has only moderate limitations in the functioning area of concentrating,

The report of Dr. Nichols' consultative examination does not demonstrate Davis has functional limitations that satisfy the paragraph B criteria of Listing 12.06 or a serious and persistent mental disorder under the paragraph C criteria of that Listing. In assessing Davis' concentration and attention, Dr. Nichols found Davis was able to perform several tests used to assess mental status and the speed of Davis' mental processing was adequate. (Tr. at 556). In assessing Davis' memory, Dr. Nichols found Davis' recent and remote memory functions appeared to be grossly intact and her immediate memory functions appeared to be fair. (*Id.* at 556). Dr. Nichols noted Davis was able to provide her personal history in detail. (*Id.*). Dr. Nichols found Davis' general fund of knowledge was adequate (e.g., there are twelve months in a year), Davis was able to interpret proverbs and complete similarity items (e.g., a bird and a butterfly both have wings) adequately, and Davis' thought processes and conversation pace were within normal limits. (*Id.* at 557). Dr. Nichols noted Davis cooperated throughout the examination. (*Id.* at 558). While Davis told Dr. Nichols she is socially awkward, is not involved in any community activities or organizations, and has no friends, she also reported she was driven to the appointment by her friend. (*Id.* at 555, 557). Dr. Nichols noted Davis' appearance was neat and clean and she had good eye contact. (*Id.* at 556). Dr. Nichols' offered the opinion Davis was able to handle her own funds and

---

persisting, or maintaining pace. (*Id.* at 20).

live independently.  (*Id.* at 558).

Moreover, as discussed, the ALJ properly discounted Dr. Nichols' opinions Davis' "ability to respond appropriately to supervision, coworkers and work pressures in a work setting is impaired" and her "anxiety and panic attacks would markedly interfere with concentration, persistence and pace."[9]

Davis presented to Dr. Fernandez in June 2014 with complaints of acid reflux, nausea, diarrhea, and abdominal pain.  (*Id.* at 460).  An endoscopy revealed mild chronic gastritis, and a colonoscopy was normal.  (*Id.* at 476-85).  Dr. Fernandez prescribed Librax and Nortriptyline after diagnosing Davis with several gastroenterological conditions and anxiety.  (*Id.* at 461, 466, 467).[10]  In September 2014, Dr. Fernandez noted Davis had a "great response" to the prescribed regimen with no further abdominal pain or diarrhea.  (*Id.* at 458).  However, because Davis was still having some anxiety issues, Dr. Fernandez increased her Nortriptyline. (*Id.*).  In December 2014, Davis reported she was still having some anxiety and the Nortriptyline was not helping.  (*Id.* at 455).  She further reported she had been

---

[9] The inconsistencies between Dr. Nichols' findings and the opinions on which she based those findings constitute additional substantial evidence on which to assign limited weight to the opinions.  *Cf. Hunter*, 609 F. App'x at 557 ("We have found good cause [to give other than substantial weight to treating physician's opinion] to exist where the doctor's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion was conclusory or inconsistent with his or her own medical records." (citing *Winschel*, 631 F.3d at 1179)).

[10] Librax is a benzodiazepine that may be used to treat IBS.  *See* https://medlineplus.gov/druginfo/meds/a601036.html, *last accessed* March 25, 2019. Nortriptyline is an antidepressant.  *See* https://medlineplus.gov/druginfo/meds/a682620.html, *last visited* March 25, 2019.

taking her father's Ativan and it had helped a lot. (*Id.*). Dr. Fernandez told Davis he does not use Ativan to treat gastroenterological conditions and suggested she talk to her primary care physician about treatment for her anxiety. (*Id.*).

The records of Dr. Fernandez, who primarily treated Davis for gastroenterological conditions, and the records of Davis' mental health providers discussed above all lack evidence of functional limitations that satisfy the paragraph B criteria of Listing 12.06 or marginal adjustment as described in the paragraph C criteria of that Listing. *See Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 925 (11th Cir. 2015) (holding claimant failed to meet burden of proving his mental conditions met Listing 12.06 (and other Listings) where record lacked medical evidence showing claimant had marked limitations in areas of mental functioning).

### C. Substantial Evidence Supporting Decision

Davis argues the ALJ's decision is not supported by substantial evidence. (Doc. 10 at 27). To support this argument, she emphasizes one of the severe impairments from which the ALJ determined she suffers is severe major depressive disorder with psychotic features. (*Id.*). However, a mere diagnosis does not establish disability. *See Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). Davis also cites Dr.

Nichols' opinions her "ability to respond appropriately to supervision, coworkers and work pressures in a work setting is impaired" and her "anxiety and panic attacks would markedly interfere with concentration, persistence and pace." (*Id.*). However, as discussed, the ALJ properly discounted these opinions.

Moreover, substantial evidence otherwise supports the ALJ's decision. In addition to the evidence discussed above, the ALJ relied on the opinions of Dr. Robert Estock, a state agency psychiatric consultant, to support his determination regarding Davis' RFC. (Tr. at 24). After reviewing the evidence, including the report of Dr. Nichols' mental examination, Dr. Estock offered the opinion Davis had no more than moderate limitations in the relevant areas of mental functioning. (*Id.* at 104-05, 109-11, 123-24, 128-30). The ALJ properly assigned substantial weight to these opinions because Dr. Estock has program knowledge, psychiatry is his specialty, and his opinions are consistent with the medical evidence. (*Id.* at 24). *See* 20 C.F.R. §§ 404.1527(c)(4) and (5), 416.927(c)(4) and (5) (identifying specialization and consistency with the record as factors relevant to weighing medical opinion); *T.R.C. ex rel. Body v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 917-18 (11th Cir. 2014) (holding ALJ was entitled to accord substantial weight to Dr. Estock's opinions because Dr. Estock provided supporting explanations for opinions, which the record supported).

The ALJ also relied on the opinion of Dr. Ronald Borlaza, a physician who

performed a consultative examination of Davis on April 23, 2016, in connection with Davis' applications for disability benefits. (Tr. at 22-23, 549-53). Dr. Borlaza's examination was overall normal, and he offered the opinion Davis has no limitations other than traveling and exposure to hazards due to decreased range of motion in the lumbar spine. (*Id.* at 552-53). The ALJ properly assigned great weight to Dr. Borlaza's opinion because it is supported by his examination and the medical evidence. (*Id.* at 24).

The opinions of Drs. Estock and Borlaza, together with records from Davis' treatment providers discussed above, constitute substantial evidence supporting the ALJ's decision. *See Wilkinson v. Comm'r of Soc. Sec.*, 289 F. App'x 384, 386 (11th Cir. 2008) (holding ALJ did not give undue weight to opinion of non-examining state agency physician because he did not rely solely on that opinion).

### D. Testimony Regarding Side Effects of Medication

Davis argues the ALJ failed to adequately consider her testimony regarding the side effects of her medication. (Doc. 10 at 27-30). To support this argument, she cites her testimony her anxiety medication causes sleepiness and, sometimes, dizziness and blurred vision, which makes her scared to drive. (*Id.* at 27).

If the record shows a claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, an ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent

to which those symptoms limit the claimant's ability to do basic work activities. *See Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th Cir. 2019) (citing *Dyer*, 395 F.3d at 1210); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. In undertaking this evaluation, an ALJ considers a variety of evidence, including a claimant's statements regarding the side effects of her medication. 20 C.F.R. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). An ALJ is permitted to discredit a claimant's testimony regarding subjective symptoms if he "clearly 'articulate[s] explicit and adequate reasons'" for doing so. *Dyer*, 395 F.3d at 1210 (*Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).

Here, the ALJ acknowledged Davis' testimony her medication caused sleepiness and dizziness. (Tr. at 22). He discredited this testimony because Dr. Mellick advised Davis in July 2016 to take less Ativan so she would be less sleepy and Davis did not do so. (*Id.* at 23, 563, 566, 571). *Cf. Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (holding ALJ's determination medication side effects did not limit claimant's capacity for work to extent claimed was supported by substantial evidence where, *inter alia*, claimant's doctors adjusted medication to address side effects); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("We have held that 'refusal to follow prescribed medical treatment without a good reasons will preclude a finding of disability . . . ." (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988))). The

undersigned also notes none of Davis' treating providers placed restrictions on her activities on account of her medication. *See Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 409 (11th Cir. 2010) (holding Appeals Council's finding any side effects of claimant's medication did not reduce her RFC was supported by substantial evidence where no doctor placed limitations on her activities because of her medication).

## V.  Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.  Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 27th day of March, 2019.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE